J-A26009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.E.E., MOTHER, AND J.A.T., FATHER | : | |
| | : | |
| | : | No. 595 WDA 2025 |

Appeal from the Decree Entered April 10, 2025
In the Court of Common Pleas of Blair County
Orphans' Court at No:  2024-00033A

| | | |
|---|---|---|
| IN RE: J.A.T., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.E.E., MOTHER, AND J.A.T., FATHER | : | |
| | : | |
| | : | No. 596 WDA 2025 |

Appeal from the Decree Entered April 10, 2025
In the Court of Common Pleas of Blair County
Orphans' Court at No:  2024-00033

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                    **FILED: January 13, 2026**

A.E.E. ("Mother") and J.A.T. ("Father") (collectively, "Parents") jointly appeal from the April 10, 2025, decrees involuntarily terminating their parental rights to their biological son, J.A.T., Jr., born in June of 2020, and

daughter, A.M.T. (collectively, "the Children"), born in March of 2023.[1,2] After careful review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record. Blair County Children, Youth & Families ("CYF") initially became involved with this family in May of 2022, prior to the birth of A.M.T., due to allegations that Parents were neglecting the routine medical needs of J.A.T., Jr., and his older half-sibling, who is not a subject of these appeals. In August of 2022, CYF began providing services to Parents to address their inadequate parenting skills, illegal drug addictions, and inappropriate housing.[3]

On March 8, 2023, the court adjudicated J.A.T., Jr., dependent and directed that he remain in Parents' home. However, on March 13, 2023, CYF received a report alleging that Father had physically abused the older half-

---

[1] By separate decrees entered on October 8, 2024, the orphans' court also involuntarily terminated the parental rights of Mother's husband, K.E., Jr., to the Children, who were born during their marriage. **See Sitler v. Jones**, 334 A.3d 861, 877 (Pa. 2025) (holding that, although rebuttable, the presumption of paternity applies when a marriage is intact). K.E., Jr., did not appeal the termination of his parental rights. We note that genetic testing performed in the underlying matter confirmed Father's paternity of the Children.

[2] On appeal, Parents are represented by the same attorney pursuant to the appointment order of the orphans' court dated May 2, 2025. Parents were represented by separate counsel during the subject proceeding.

[3] Prior to CYF involvement, Parents were evicted from their home. Thereafter, they were residing in the home of the Children's paternal grandmother, which CYF found to be in poor condition and unsuitable for the Children.

sibling.[4] CYF immediately visited the family's home, where they found J.A.T., Jr., then two years old, wheezing with a high fever and took him to the emergency room. On that date, the court placed J.A.T., Jr., in the emergency protective custody of CYF.

It is important to note that J.A.T., Jr., was diagnosed with severe asthma. He was also diagnosed with autism, attention deficit hyperactivity disorder ("ADHD"), and general developmental delays. *See* N.T., 3/31/25, at 8. The record reveals that J.A.T., Jr., communicated with sign language during the first year of his dependency. At the time of the subject proceeding, J.A.T., Jr.'s speaking ability had improved, but it was limited to repetition and one- or two-word phrases. *See id.* at 19. This resulted in behavioral issues, such as hitting, biting, and pulling the hair of his peers at his early intervention program.

In March of 2023, A.M.T. was born with cocaine in her system. Upon discharge, the court placed A.M.T. in the emergency protective custody of CYF. The court adjudicated A.M.T. dependent on April 14, 2023. The court established the Children's primary permanency goals as reunification with concurrent goals of adoption. In furtherance of reunification, the court ordered Parents to, *inter alia*: (1) complete drug and alcohol evaluations and

---

[4] Upon investigation, CYF indicated this report against Father.

comply with all treatment recommendations; (2) participate in random drug screens; and (3) obtain and maintain appropriate housing.

Although Parents attended virtual drug and alcohol counseling throughout the underlying dependency proceedings, they consistently tested positive for illegal drugs. *See* CYF Exhibit 1 at 2-4. In addition, the record reflects that Parents refused, in large part, to consent to the medical treatment recommended by the Children's physicians, including a behavioral evaluation for J.A.T., Jr., and A.M.T.'s need for ear tubes due to her chronic ear infections. *See* N.T., 3/31/25, at 10, 14, 21-22.

On August 21, 2024, CYF filed separate petitions to involuntarily terminate Parents' parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). The orphans' court held an evidentiary hearing on September 26, 2024, and March 31, 2025, at which time J.A.T., Jr., was nearly five years old and A.M.T. was two years old.[5] At this time, the Children had been removed from Parents' care for two years.

_____

[5] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020). Further, if a child's guardian *ad litem* ("GAL") is appointed to the dual role of representing a child's best and legal interests, "appellate courts should review *sua sponte* whether the orphans' court made a determination" that the child's legal interests and best interests "did not conflict." *Id.* Our review of the record in this case reveals that the orphans' court appointed Tyler Rowles, Esquire, who was the Children's GAL in the dependency proceedings, as their legal counsel. *See* Rules Returnable, *(Footnote Continued Next Page)*

CYF presented the testimony of the Children's foster mother ("Foster Mother"). CYF did not present the testimony of any of its caseworkers. However, CYF introduced three documentary exhibits. CYF Exhibit 1 was a report from Path House, the provider which administered Parents' drug screens and supervised visitation between them and the Children. Parents presented their individual testimonies.

By decrees dated April 7, 2025, and entered on April 10, 2025, the orphans' court terminated Parents' parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). On May 7, 2025, Parents timely filed notices of appeal and contemporaneous concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.

On appeal, Parents request that we review whether the evidence was sufficient to involuntarily terminate their parental rights to the Children.[6] ***See***

_____

8/23/24. The orphans' court ensured that Attorney Rowles could represent the Children's best and legal interests without conflict. ***See*** N.T., 9/26/24, at 2-4; N.T., 3/31/25, at 1-2. Furthermore, we observe that, inasmuch as A.M.T. was two years old, her interests could not conflict. ***See T.S.***, 192 A.3d at 1092-93 ("[I]f the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests[.]"). Similarly, J.A.T., Jr.'s preferred outcome was equally indiscernible due to his aforementioned speech and developmental delays. ***See id.*** As such, we conclude that the orphans' court fulfilled the mandate of ***K.M.G.*** and Section 2313(a).

[6] We note with displeasure that the Children's GAL did not participate in this appeal.

- 5 -

Parents' Brief at 4. We review involuntary termination decrees for an abuse of discretion. *See Interest of M.E.*, 283 A.3d 820, 829 (Pa. Super. 2022). This Court has explained:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id.* at 829-30 (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant

termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See M.E.*, 283 A.3d at 830 (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Our analysis in this case will focus upon 23 Pa.C.S.A. § 2511(a)(2) and (b),[7] which provide, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .

---

[7] Given our disposition with respect to Section 2511(a)(2), we need not review the orphans' court's findings regarding Section 2511(a)(5) and (8). *See In re K.R.*, 200 A.3d 969, 979 (Pa. Super. 2018) (*en banc*) (observing that this Court may proceed to a review of one subsection of Section 2511(a) "[w]ithout considering the orphans' court's determinations" under any other subsection).

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). Overall, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental,

physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993); *see also Interest of K.T.*, 296 A.3d 1085, 1109-10 (Pa. 2023). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *Id.* (citing *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008)). In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. Indeed, the High Court stated:

> Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children.

*Id.* The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Our Supreme Court has recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. Further, orphans' courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 1106.

Instantly, with respect to Section 2511(a)(2), Parents argue that the orphans' court abused its discretion because they participated in drug and alcohol counseling and never refused to be drug screened. *See* Parents' Brief at 13-15. In addition, Parents claim that they had remedied their inadequate housing. *See id.* at 15-16. We disagree.

The record demonstrates that Parents had not remedied their illegal drug addictions. Parents testified and reported to CYF that they were attending virtual drug and alcohol counseling with Rhonda Clark. *See* N.T., 3/31/25, at 30, 35-36, 40-41; CYF Exhibit 1 at 2. Father testified that he had been participating in drug and alcohol counseling with Ms. Clark for approximately two years. *See* N.T., 3/31/25, at 41. Mother testified that she was attending counseling with Ms. Clark on a monthly basis, but she did not disclose when she started. *See id.* at 30, 35-36. Father testified that he was attending the counseling every week. *See id.* at 40-41. However, the record is devoid of any evidence to support Parents' testimony in this regard. In addition, the record does not reveal Parents' progress, if any, with their drug and alcohol counseling provided by Ms. Clark.

Indeed, Parents consistently tested positive for illegal substances in their drug screens. *See* CYF Exhibit 1 at 2-4. Specifically, Mother tested positive on ten screens since February of 2024, and most recently on March 5, 2025. *See id.* at 2-3. Mother tested positive for methamphetamines, amphetamines, ecstasy, buprenorphine, and benzodiazepines. *See id.*

Likewise, Father tested positive on seventeen screens during the same time period, and most recently on February 19, 2025. *See id.* at 3-4. Father's tests were positive for methamphetamines and amphetamines. *See id.* Thus, the record is unequivocal that Parents have not overcome their illegal drug addictions.

We also reject Parents' claim that they had rectified their housing issues. Parents testified that they continued to cohabit in the paternal grandmother's home, which CYF had previously found to be in poor condition and inappropriate for the Children. *See id.* at 23-24, 38.

Finally, this record demonstrates that Parents neglected J.A.T., Jr.'s medical needs at the outset of the case. *See* Order of Adjudication and Disposition (A.M.T.), 4/26/23, at 4 (finding that Parents were "not following up on immunizations, check ups and medical appointments" for J.A.T., Jr., prior to CYF involvement). Parents continually refused their consent for medical treatment recommended by the Children's doctors. *See* N.T., 3/31/25, at 10, 14, 21-22. Foster Mother testified that J.A.T., Jr., required a behavioral evaluation due to "impulsivity, hitting, kicking, biting," *inter alia*. *Id.* at 9. However, Parents would not consent to J.A.T., Jr., being evaluated. *See id.* at 21. Pursuant to a court order, J.A.T., Jr., was evaluated which resulted in his diagnoses of autism, ADHD, and developmental delays. *See id.* at 8. Similarly, A.M.T. was suffering from persistent ear infections, for which her doctor recommended ear tubes, but Parents would not approve this

treatment. ***See id.*** at 14, 21. A.M.T. ultimately underwent this procedure for ear tubes per court order.

The foregoing record evidence undoubtedly establishes that Parents' repeated and continued incapacities, neglect, and refusal due to their illegal drug addictions and failure to satisfy their permanency objectives have caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. In addition, the record sufficiently supports that Parents' incapacities, neglect, and refusal cannot or will not be remedied. Therefore, we discern no abuse of discretion in the orphans' court's determination that involuntary termination of Parents' parental rights was warranted pursuant to Section 2511(a)(2).

With respect to Section 2511(b), Parents argue that the court abused its discretion when it terminated their parental rights because Parents have a "very good relationship" with the Children. Parents' Brief at 21. Specifically, Parents assert that the Children love them and are excited to see them at supervised visits, which occurred weekly throughout the dependency proceedings. ***See id.*** Parents further contend that CYF failed to meet its evidentiary burden due to its failure to conduct a bonding assessment between Parents and the Children. ***See id.*** at 22. We are not persuaded by Parents' arguments.

Initially, with respect to Parents' contention that CYF failed to meet its evidentiary burden without a bonding assessment, the law is well-settled that

a "formal bonding evaluation" is not required to terminate under Section 2511(b). ***In re J.N.M.***, 177 A.3d 937, 944 (Pa. Super. 2018).

In this case, the record contains no competent evidence of a bond between the Children and Parents. Therefore, it was reasonable for the court to infer that none existed. ***See J.M.***, 991 A.2d at 324. In fact, Foster Mother stated that J.A.T., Jr.'s negative behaviors increased around the days when he had supervised visitation with Parents. ***See*** N.T., 3/31/25, at 9, 18. To the extent Parents argue that their collective testimonies proved that the Children shared a bond with them, the court was within its discretion to discredit Parents' testimony. ***See M.E.***, 283 A.3d at 829-30. For instance, Parents testified that the Children expressed excitement to see them during supervised visitation, but, even if the court credited their testimony, it is not sufficient to prove the type of bond relevant to Section 2511(b). ***See*** N.T., 3/31/25, at 26, 43; ***see also K.T.***, 296 A.3d at 1109-10 (stating that one portion of the Section 2511(b) analysis is whether termination would cause the "severance of a necessary and beneficial relationship[,]" which it described as "the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm.").

It is important to note that the Children have consistently been placed together with Foster Mother and her husband. ***See*** N.T., 3/31/25, at 8, 15. As discussed above, the record unquestionably demonstrates that Parents did not and cannot meet the Children's specific developmental and physical needs.

Conversely, Foster Mother testified that she and her husband have "advocated" for the Children to obtain necessary medical treatment. ***Id.*** at 13. She stated that the Children's health and safety is their "number one priority." ***Id.*** Foster Mother testified that J.A.T., Jr., is currently on a waitlist to receive additional services for his developmental and behavioral problems. ***See id.*** at 9, 11.

Finally, Foster Mother testified that she loves the Children "like her own" and that she and her husband are a pre-adoptive resource for the Children. ***Id.*** at 13, 15. She stated that J.A.T., Jr., looks to her and her husband "for help regulating and calming down on a bad day." ***Id.*** at 12-13. Foster Mother testified that the Children are bonded to her and her husband. ***See id.*** at 13.

Based upon the foregoing, it is clear that the Children's developmental, physical and emotional needs and welfare are best served by the termination of Parents' parental rights. Therefore, we discern no abuse of discretion in the orphans' court's conclusion that CYF met its evidentiary burden pursuant to Section 2511(b).

Thus, we affirm the decrees involuntarily terminating Parents' parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/13/2026